FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 12, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GEORGE B.,[1]<br><br>              Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY, the<br>Commissioner of Social Security,<br><br>              Defendant. | No.   2:23-cv-329-EFS<br><br>**ORDER REQUIRING PAYMENT OF PREVIOUSLY REPAID RETIREMENT BENEFITS TO PLAINTIFF BUT DENYING PLAINTIFF DECLARATORY JUDGMENT RELIEF** |

Plaintiff George Bartz, who is proceeding pro se, maintains that he is entitled to Title 2 retirement insurance benefits for eighteen months that the Social Security Administration has denied him. In addition, Plaintiff seeks a declaration that he is entitled to benefits since June 2012 because absent his now-vacated sentence he would have applied for benefits at that time. The Commissioner opposes Plaintiff's requested relief, arguing that the bar against awarding retirement benefits to confined persons applies and there is no authority to enter the requested declaratory relief. For the reasons given below, the

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER - 1

Commissioner is directed to pay Plaintiff Title 2 retirement benefits for the at-issue months of March–September 2013 and August 2014–January 2016. However, the request for declaratory relief is denied.

## I.    Background[2]

The pertinent events are:

- November 2000: Plaintiff is sentenced to 184 months for first degree assault in Spokane County Superior Court.[3] The sentencing court based his sentence on an offender score of 5, with 2 of the points based on a 1991 conviction.[4]

- January/February 2012: The month Plaintiff would have been released, considering earned "good-time" release credits if his imprisonment sentence had been calculated correctly initially.[5]

---

[2] The prior Order Denying Commissioner's Motion to Dismiss sets forth additional background. ECF No. 7.

[3] ECF No. 1, Ex. 2; AR 250–59.

[4] AR 122–23.

[5] AR 68 (citing RCWs and WACs applicable to calculating earned "good time" release credits); AR 283 (identifying Plaintiff's earned "good time" release credit). The ALJ found that it would be speculative to determine whether Plaintiff would have received good-time credit in connection with the subsequently imposed 160-month sentence. This "speculative" finding is not supported by substantial evidence

- June 2012: Plaintiff turns 67—the full retirement age for Title 2 retirement insurance benefits.

- September 2013: Plaintiff is released from prison to community custody for the remainder of his initially imposed sentence.[6] Soon after his release, Plaintiff files for Social Security retirement benefits.[7] He soon begins receiving monthly retirement benefits, including retroactive benefits from March 2013 to September 2013 in the amount of $12,467.[8]

- February 2014: The month Plaintiff would have no longer been subject to community supervision if his imprisonment sentence had been calculated correctly initially.

---

given that there is no evidence to contest that Plaintiff's behavior while confined before February 2012 entitled him to receive good-time credit.

[6] ECF No. 1, Ex. 1; AR 272–74.

[7] ECF No. 4, Ex. 1; AR 88–97.

[8] ECF No. 4 ¶ 4; AR 98–101. *See also* 42 U.S.C. § 402(j)(1)(B). SSA POMS GN 00204.030, Retroactivity for Title II Benefits, available at https://secure.ssa.gov/poms.nsf/lnx/0200204030 (last accessed July 11, 2024).

ORDER - 3

- August 2014: Still subject to his initially miscalculated sentence, Plaintiff is reincarcerated for a community-custody violation and confined until January 2016.[9]

- November 2014: The Social Security Administration (SSA) ceases Plaintiff's monthly retirement payments until he is released from confinement in January 2016 and requests repayment of the benefits previously paid from August–October 2014 in the amount of $3,792.[10]

- February 2016: The SSA advises Plaintiff that because he was confined from March–September 2013 he was not eligible to receive retirement benefits for the 6-month period before his application date, and therefore he must repay the $12,467 received for that period.[11] In time, Plaintiff repays the claimed overpayment through an adjustment of his future monthly benefits.[12]

- June 2017: Plaintiff's 1991 conviction is vacated because the statute under which he was convicted was repealed.[13] Thus, his offender score

---

[9] AR 279–82, 284, 286. During this period of confinement, Plaintiff again earned "good time" release credit.

[10] AR 145.

[11] AR 102–08.

[12] AR 109–10.

[13] ECF No. 1, Ex. 2 at 2.

ORDER – 4

1

2

when determined in November 2000 should have been two fewer points.[14]

- March 2018: Plaintiff requests the SSA waive the overpayment recoveries because he was held in jail for two years longer than legal due to a legal error and that he should have been released to community custody in early 2012.[15]

- June 2019: The Washington Court of Appeals rules that Plaintiff's initial "2000 judgment and sentence is facially invalid" because the sentencing court exceeded its statutory authority when entering a sentence that was based on an improperly increased offender score and increased standard range.[16] Because "the offender score included the erroneous conviction," the Court of Appeals remanded the matter back to the sentencing court to correct Plaintiff's sentence and enter a new judgment to 160 months.[17]

- August 2019: Spokane County Superior Court enters an Order Amending Judgment and Sentence, imposing a 160-month sentence

---

[14] AR 153.

[15] AR 112–29. *See also* AR 131–34, 145–49.

[16] ECF No. 1, Ex. 2 at 7; AR 164.

[17] ECF No. 1, Ex. 2 at 9.

ORDER - 5

and noting that Plaintiff previously completed both his term of incarceration and community custody.[18]

- May 2022: ALJ Lori Freund hears Plaintiff's claim that based on his vacated sentence he should not have been required to repay the $12,467 in retirement benefits from March 1, 2013, to September 30, 2013, and he should receive retirement benefits for the period from August 2014–January 2016.[19]

- September 2022: The ALJ issues a written decision finding that, because Plaintiff was confined during the at-issue periods, 1) Plaintiff was overpaid benefits during the period March 1, 2013, to September 30, 2013, and that he was at fault in causing the overpayment; and 2) Plaintiff was overpaid benefits during the period August 1, 2014, to October 31, 2014, and he was at fault in causing the overpayment.[20]

---

[18] AR 270–71.

[19] AR 26–59.

[20] AR 14–25. The SSA initially determined that it overpaid $12,467. The ALJ likewise found Plaintiff liable for repayment in this amount, even though $12,467 is the amount for only the March–September 2013 benefits and does not include the $5,488.20 in August–October 2014 benefits (other documents reflect benefits for this period totaled $3,792, AR 139, 141). The record is unclear why or how the SSA or ALJ decided that only the $12,467 needed to be repaid, when they had

The Appeals Council denied Plaintiff's request to review the ALJ's decision.[21] Plaintiff filed this lawsuit asking the Court to 1) reverse the ALJ's decision requiring him to repay the claimed overpayments; 2) order the SSA to pay him retirement benefits for November 2014–January 2016; and 3) enter a declaratory judgment that Plaintiff would have applied for retirement benefits in June 2012 and therefore was eligible for benefits since that date.[22]

## II.    Analysis

**A.    Limitation on Retirement Benefits to Prisoners**

The Commissioner argues that, because Plaintiff was in prison from March through September 2013 and from August 2014 through January 2016, he was not eligible to receive Title 2 retirement benefits during these periods and therefore he was properly directed to repay the received retirement benefits. Plaintiff counters that because he was confined during the at-issue periods pursuant to a subsequently vacated judgment and sentence the statutory prohibition against paying retirement benefits to a confined individual does not apply.

---

decided that Plaintiff improperly received benefits for both of these periods. However, the Court need not resolve this issue because Plaintiff is entitled to receive retirement benefits for these periods.

[21] ECF No. 1, Ex. 4.

[22] ECF No. 1.

ORDER - 7

1
2
3

The Court agrees with Plaintiff: the statutory and regulatory prohibition against the payment of retirement benefits to one in confinement does not apply under these unusual circumstances. Section 402(x)(1)(A) states

4
5
6
7

> . . . no monthly benefits shall be paid under this section or under section 423 of this title to any individual for any month ending with or during or beginning with or during a period of more than 30 days throughout all of which such individual—
> (i) is confined in a jail, prison, or other penal institution or correctional facility *pursuant to his conviction of a criminal offense.*[23]

8
9
10
11
12
13
14
15
16
17

There is no question that Plaintiff was confined during the at-issue periods. However, after serving the confinement, the state court found his judgment and sentence invalid because the sentencing court exercised power it did not have.[24] After the state court of appeals declared the judgment and sentence facially invalid, the case was remanded back to the sentencing court and a new judgment and sentence were entered for 160 months—24 months shorter than the invalid 184-month sentence. The vacatur of Plaintiff's initial sentence "'wipes the slate clean,' [and] requires us to treat the vacated sentence as if it were never imposed."[25] Due to the vacated initial judgment and sentence, any confinement

18
19
20
21
22
23

[23] 42 U.S.C. § 402(x) (emphasis added).

[24] *See In re Coats*, 173 Wn.2d 123, 135–36 (2011) (discussing that the Washington Supreme Court has "regularly found facial invalidity when the court actually exercised a power it did not have").

[25] *United States v. Merrell*, 37 F.4th 571, 577 (9th Cir. 2022) (cleaned up).

beyond 160 months was effectively "never imposed" and therefore such confinement was not "pursuant to his conviction of a criminal offense."[26]

The Commissioner argues that because Congress did not discuss retroactively reduced sentences in this statute or the related regulation it is clear that the "confinement bar" prohibits the payment of benefits to one with a later reduced sentence. However, this is not simply a matter of a retroactively reduced sentence as the Commissioner describes but instead Plaintiff's initial judgment and sentence was vacated and a new (shorter) judgment and sentence imposed. The Commissioner's argument overlooks both the legal effect of a vacated judgment and sentence and that Congress is understood to "write statutes against the backdrop of the existing landscape," which is that vacating a sentence "wipe[s] the slate clean."[27] In addition, Congress could have simply prohibited the payment of benefits to anyone "confined in a jail, prison, or other penal institution or correctional facility." Instead, Congress added the phrase "pursuant to his conviction of a criminal offense." This clause emphasizes that Congress intended for the confinement to be subject to a valid criminal conviction.

The SSA's regulation pertaining to confined persons is phrased differently than 42 U.S.C. § 402(x)(1)(A). In comparison, 20 C.F.R. § 404.468(a) states, "No

---

[26] AR 260–269.

[27] *United States v. Uriarte*, 975 F.3d 596, 602 (7th Cir. 2020) (quoting *Pepper v. United States*, 562 U.S. 476, 507 (2011).

monthly benefits will be paid to any individual for any month any part of which the individual is confined in a jail, prison, or other penal institution or correctional facility *for conviction of a felony*."[28] Plaintiff was convicted of a felony and was confined in prison. However, later his initial judgment and sentence were found to be facially invalid because the sentencing court exceeded its authority, therefore that conviction was wiped clean—and a new felony conviction put in its place. Plaintiff's confinement for the new felony conviction would have ended in February 2012. Therefore, Plaintiff was not technically confined in prison for conviction of a felony during the at-issue periods of March–September 2013 or August 2014–January 2016.

As the ALJ highlighted, in addition to the "confinement bar" set forth in the statute and regulation, POMS GN 02607.200 applies to Special Legal Considerations for Prisoner Suspensions. The ALJ found that this POMS did "not specifically address cases where a claimant's sentence has been modified."[29]

---

[28] 20 C.F.R. § 404.468(a) (emphasis added).  Congress granted the SSA:

> authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

42 U.S.C. § 405(a).

[29] AR 20.

However, as discussed above, Plaintiff's sentence was not simply modified by the state court. Plaintiff's initial judgment and sentence was determined to be facially invalid because the sentencing court did not have the authority to impose the initial sentence. Therefore, Plaintiff's conviction was overturned and a new conviction with a shorter sentence imposed. POMS GN 02607.200.A.3.a. provides that if a conviction is overturned and no additional legal proceedings are required then benefits are to be reinstated if they were suspended and any withheld benefits repaid. Under the facts here, POMS GN 02607.200 supports the award of retirement benefits to Plaintiff for the at-issue periods.[30]

The Commissioner also argues that Plaintiff is not eligible for retirement benefits during the at-issue periods because he cannot establish that even if he had been released to community custody in February 2012 that he would not have violated his terms of community custody and returned to confinement. This argument places an unfair burden on Plaintiff. Plaintiff has established that he improperly served about 18 additional months in confinement after February 2012 because of his invalid judgment and sentence and that thereafter he also served 12 months in community custody before serving another 18 months in confinement. Plaintiff need not also prove that he would not have violated his terms of

---

[30] 42 U.S.C. § 402(j)(1)(B). SSA POMS GN 00204.030, Retroactivity for Title II Benefits, available at https://secure.ssa.gov/poms.nsf/lnx/0200204030 (last accessed July 11, 2024).

community custody—and not been returned to confinement—if he had been released in February 2012. Rather, given that the initial judgment and sentence were facially invalid, there is sufficient information to establish that Plaintiff's confinement during March 2013–September 2013 and August 2014–January 2016 were not either "pursuant to his conviction of a criminal offense" or "for conviction of a felony."

Finally, the Commissioner argues that payment of benefits for the months that Plaintiff was confined, even improperly, is contrary to Congressional policy because Plaintiff would receive benefits for months that the government paid for his living expenses. While this may be a sound policy argument, a plain reading of the at-issue statute, regulation, and POMS, after considering Plaintiff's invalidated initial judgment and sentence, does not bar Plaintiff from receiving retirement benefits for March–September 2013 or August 2014–January 2016.

Because the "confinement bar" does not apply to Plaintiff after February 2012, the ALJ's analysis—and the Commissioner's arguments—unnecessarily focus on whether Plaintiff established grounds to waive the SSA's collection of the purported overpayments.[31] Because Plaintiff is eligible to receive retirement benefits during the at-issue periods and therefore there were no overpayments, the Court need not address whether Plaintiff was at fault for receiving the retirement benefits initially paid to him for these periods.

---

[31] *See* 42 U.S.C. § 404.

**B.    Awarding benefits starting June 2012 is not appropriate.**

Plaintiff also seeks a declaratory judgment that he is entitled to benefits from June 2012, the month he turned 67. Such relief is not appropriate. Plaintiff did not file for retirement payments until September 2013. He fails to establish that the Court has authority to grant retroactive retirement benefits beyond the statutorily permitted 6-month window before the benefit application date.[32]

### III.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The parties' briefs, **ECF Nos. 9 & 10**, are **TERMED**.

2.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits. **Retirement benefits are to be paid for the months of March 2013 to September 2013, and August 2014 to January 2016.**

3.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to Mr. Bartz and counsel.

**DATED** this 12th day of July 2024.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

---

[32] *See, e.g.,* 42 U.S.C. § 402(j).